Daniel Warren JAMES, Movant

v.

KENTUCKY BAR ASSOCIATION, Respondent.

No. 2013–SC–000152–KB.

Supreme Court of Kentucky.

April 25, 2013.

## OPINION AND ORDER

Daniel Warren James, pursuant to SCR 3.480(2), moves this Court to enter an Order resolving the nine pending disciplinary proceedings against him (KBA File Nos. 17166, 17237, 17414, 17596, 19171, 19334, 19463, 19483, and 19563) by imposing a suspension from the practice of law for five years with several conditions. This motion is the result of an agreement with Bar Counsel for the Kentucky Bar Association. For the following reasons, the motion is granted.

### I.  Background

James was admitted to the practice of law in the Commonwealth of Kentucky on October 17, 1991; his KBA member number is 84052. His bar roster address is 110 E. Main St., Georgetown, Kentucky 40324.

In January 2013, he was suspended for failing to pay bar dues. Later that month, he was automatically suspended under SCR 3.166 for a felony criminal conviction of flagrant non-support. (The criminal conviction is currently being addressed in a separate proceeding before the Inquiry

Commission and is not presently before the Court.)

Though James has reached a negotiated sanction with Bar Counsel as to the presently pending charges, a short recitation of the facts underlying each charge is necessary.

### A. KBA File No. 17166

Jackie Savage hired James to handle a dispute with a building contractor in March 2007 related to building a sunroom. She paid an advance fee of $1500.

In May 2007, at James's request, Savage contacted the City of Nicholasville and found that the contractor had not obtained a building permit before doing the work. In June 2007, she gave the contractor a copy of the letter from the city confirming the lack of a building permit. She and the contractor then worked out an agreement resolving their dispute.

Afterward, Savage contacted James to check on the balance of her advance fee payment and was told she had $1300 credit remaining. James failed to refund this amount, and Savage eventually filed a bar complaint against him.

A copy of the bar complaint was served on James in March 2009. While he asked for an extension of time, he ultimately failed to respond to the bar complaint.

The Inquiry Commission eventually issued a two-count charge alleging that James had violated SCR 3.130–1.16(d) [1] by failing to return the unearned portion of the advanced fee payment, and SCR 3.130–8.1(b) by failing to respond to the bar complaint.

### B. KBA File No. 17237

Dena Greer Masters hired James to represent her in a domestic matter and paid him an advance fee payment, which James did not deposit into an escrow account. Several times during the representation, James gave the client billing statements showing a positive balance. Specifically, in June 2008, Masters received a statement showing a balance of $867.91. At that time, the client terminated the representation and requested a refund of the rest of the fee.

After that, in April 2009, James produced a billing statement showing work in May 2008, before the representation was terminated, and a charge of $143.25. Those charges were not listed in the June 2008 billing statement. In addition to the new charge, the April 2009 bill charged the client $570 to copy her file (six hours at $95 per hour) and $425 for the expense of copying (1700 pages at $0.25 per page), for a total of $995 simply to produce a copy of the client file. The April 2009 bill also showed other postage and copying expenses that had not appeared in the June 2008 bill. With these added charges, the new billing statement showed no amount of the prepaid fee remaining.

Bar Counsel asked James for documents from this client file on multiple occasions; James did not timely respond to those inquiries.

The Inquiry Commission eventually issued a five-count charge alleging that James had violated SCR 3.130–1.5 by charging an unreasonable fee for copying the client's file and other services; SCR 3.130–1.15(a) by failing to place the advance fee payment into an escrow account; SCR 3.130–1.16(d) by failing to return the unearned portion of the advance fee payment upon termination of the representation; SCR 3.130–8.3(c) by altering his bill to consume the unearned portion of the fee; and SCR 3.130–8.1(b) by failing to

---

1. For violations occurring before July 2009, the citations are to the old version of the rules. Many of the rules were redrafted or renumbered in July 2009.

respond to Bar Counsel's lawful demands for information.

## C. KBA File No. 17414

Deborah Johnson hired James to represent her in a divorce. As part of those proceedings, Johnson was awarded half the balance of her husband's pension, which totaled $21,606.26. A check for that amount payable to the client was sent to James's office. When Johnson contacted James's office, she was told by a paralegal that the check had not arrived. But when Johnson contacted United Trust, she was informed that the check had been deposited by James.

James had in fact endorsed the check and cashed or deposited it without the client's signature. Johnson continued to call James's office in an attempt to get the money, but these calls were not returned. Eventually, Johnson went to James's office, where she was told by staff that she owed $680, even though she had just recently received a bill showing only $325 owed.

James's paralegal eventually gave Johnson a check for her share of the pension, but when Johnson went to cash the check, it was refused for insufficient funds. In addition, the bank would not accept the check because the payee line had been covered with white-out and Johnson's name written over it, and the original amount of the check had been altered.

Johnson then contacted James and told him she would call the police if she did not get her money. James then transferred the money into her account.

The Inquiry Commission issued a three-count charge alleging that James had violated SCR 3.130–1.15(a) by failing to place the advance fee payment into an escrow account, failing to keep client funds separate from his own funds, and failing to place the funds in an account where the KBA would be notified of an overdraft;[2] and SCR 3.130–8.3(b) and (c) by misappropriating a client's money for his own use.

## D. KBA File No. 17596

Elisha Nicole Wilhoit, a graduate student at Asbury Theological Seminary, was arrested for felony theft in Wilmore in November 2008 for allegedly stealing a painting worth $2,000. She allegedly took the painting from the student union back to her dorm room without permission.

Her mother, Deborah Wilhoit, lives in Alabama and found James's website on the internet. She hired him to represent her daughter. She was told by James's paralegal that a $5,000 retainer was required to hire him. The representation was to be for the criminal charges and an eviction proceeding related to Elisha Nicole's dorm room. James agreed to contact Deborah with updates on the case, and that a copy of a representation agreement, a monthly billing statement, and other correspondence would be mailed to her.

In November 2008, Elisha Nicole met with James and his paralegal and was told of the process that would follow. She gave James the $5000 in two payments that month.

During this time, Elisha Nicole had to stay with friends and at a hotel. She was denied access to her dorm room, where her belongings, including prescription medication, were. James's paralegal informed Deborah that the firm would work on the issues with the school while waiting on the court date in the criminal case.

2. Apparently, James's escrow account was overdrawn many times between June 2005 and December 2005.

James, however, did not diligently represent Nicole in her dispute with the school.

At the first appearance in the criminal case, another lawyer stood in for James. James did not charge for the appearance, though Nicole had not been told he would be absent. After the hearing, she went to his office and was given a bill summary reflecting a charge of $200 for the initial consultation and showing a remaining balance of $4,800.

Neither Nicole nor her mother was ever given a written agreement. Deborah left voice messages for James, but her calls were not returned. James never mailed anything to Deborah and never responded to her emails.

Nicole returned to Alabama to await her trial date, which was to be January 12, 2009. Neither she nor her mother was able to contact James or his staff around this time. She travelled back to Kentucky for her court date, only to find again that James was not present. He had, however, discussed the case with the prosecutor in an effort to resolve the matter. After details of these negotiations were presented to the judge, presumably by the prosecutor, the charges were dismissed.

The school's attorney had been willing to drop the charges, but the school's attorney could not reach James and never heard from him otherwise.

Deborah Wilhoit terminated the representation and asked for a refund of the unearned portion of the fee. James notes in his motion to this Court that he "maintains that, based on the services provided to the client, Ms. Wilhoit is entitled to a refund of $3,000.00."

During the proceedings in this matter, Bar Counsel repeatedly asked James for a copy of his client file in the matter and a timeline of legal services performed in the case. He did not timely answer those inquiries.

The Inquiry Commission eventually issued a six-count charge alleging that James had violated SCR 3.130–1.3 by failing to diligently represent his client in her criminal matter and her dispute with the school; SCR 3.130–1.4(a) by failing to keep the client reasonably informed about her case and failing to respond to requests for information; SCR 3.130–1.4(b) by failing to explain the matter to the client to the extent reasonably necessary for her to make informed decisions about the representation; SCR 3.130–1.15(a) by failing to place the advance fee payment into a proper escrow account; SCR 3.130–1.16(d) by failing to return the unearned portion of the advance fee payment upon termination of the representation; SCR 3.130–8.3(c) by altering his bill to consume the unearned portion of the fee; and SCR 3.130–8.1(b) by failing to respond to Bar Counsel's lawful demands for information.

### E. KBA File No. 19171

Shawn Naughton hired James in July 2010 to represent him in an uncontested divorce. Naughton paid $250, half of the fee, at the start of the representation, and was told he could pay the rest later. After a month and a half, Naughton had not heard anything from James and contacted his office. He was told that it would be a few more days and that James was working on the file. He waited a few more days and called back, leaving a message on an answering machine. He did this several more times, but James did not call back. In September, Naughton contacted James by cell phone and was told the divorce would soon be filed if the remaining portion of the fee was paid. He did not pay, and the divorce action was not filed.

The Inquiry Commission issued a four-count charge alleging that James had violated SCR 3.130–1.3 by failing to diligently

represent his client; SCR 3.130–1.4(a)(4) by failing to respond to requests for information from the client; SCR 3.130–1.15(a) by failing to place the $250 fee into a proper escrow account; and SCR 3.130–1.16(d) by failing to return any unearned portion of the advance fee payment.

### F.   KBA File No. 19334

Tyle Fries hired James to represent him in a lawsuit against his ex-fiance in which he was trying to recover $4,000. Fries paid $500 in advance.

In March 2010, James filed a civil complaint in Jessamine District Court. James filed requests for admission and received answers; he also received the answer, counterclaim, and motion to transfer to circuit court filed by the defendant.

James informed Fries about the counterclaim and, at the same time, told Fries that he owed an additional $645 for work completed at that time. On March 22, 2010, James filed an answer to the counterclaim and began having conversations with opposing counsel about court dates and a protective order. The defendant was deposed in August 2010.

In September 2010, opposing counsel began having trouble contacting James. He was sent a letter in October setting a mediation date for November.

Fries sought updates from James but was not advised of progress in the case or the mediation. James failed to appear for the mediation. James's staff contacted Fries the next day and falsely told him the mediator had been sick and the mediation was rescheduled. He was not told that James missed the mediation.

The Inquiry Commission issued a three-count charge alleging that James had violated SCR 3.130–1.3 by failing to diligently represent his client; SCR 3.130–1.4(a) by failing to respond to the client's repeated attempts to contact him; and SCR 3.130–8.4(c) by lying to the client about the missed mediation.

### G.   KBA File No 19463

In July 2010, Sarah Campbell hired James to represent her in a custody case concerning her infant nephew. She paid James $500 by check at that time. James cashed the check and did not place it in his escrow or operating account.

James prepared documents in the case, and Campbell picked them up around July 29. The documents were to be signed by the mother and notarized. Campbell also paid James the $151 filing fee, again by check. This check was also cashed by James and not placed into escrow. The money was not used to pay filing fees.

Campbell obtained the signature on the documents and tried repeatedly to contact James's office for over two weeks. Her calls were not returned. She visited the office, which looked closed, several times, but was never able to reach James. James never filed her petition, and she filed a bar complaint in January 2011.

The Inquiry Commission issued a five-count charge alleging that James had violated SCR 3.130–1.3 by failing to diligently represent his client and failing to promptly file the documents in the case; SCR 3.130–1.4(a) by failing to respond to requests for information; SCR 3.130–1.4(b) by failing to explain issues in the custody matter to the extent reasonably necessary for her to make informed decisions about the representation; SCR 3.130–1.15(a) by failing to place the advance fee payment into a proper escrow account and by failing to properly handle the filing fee paid by the client; and SCR 3.130–1.16(d) by failing to return the unearned portion of the advance fee payment and filing fee upon termination of the representation.

### H. KBA File No. 19483

Hubert Stafford hired James in 2006 to represent him in a matter concerning the purchase of a pick-up truck from a dealership. James asked for $1,500 as a retainer in the case. Stafford paid the retainer in two payments in November and December 2006. James did not put these payments into his escrow account.

James sent a letter to the dealership stating that he represented Stafford and alleging there were discrepancies regarding the sale, purchase, and transfer of the truck. He received a response the next day denying any wrongdoing; he also received documentation showing the sale was "As Is."

James nevertheless drafted a complaint for the client. Stafford claimed the truck had previously been wrecked and had more than one owner, and that its odometer had been tampered with. In March 2007, James wrote a letter to his client asking for more information. The client supplied information showing the sale had been "As Is," which James states had already been received from the dealership.

That same month, a GM Vehicle Inquiry System Summary was obtained on the truck. No odometer tampering was found. James then told Stafford that he could not file the complaint he had previously drafted because it would be considered frivolous. James considered the representation over at that time.

Stafford, however, continued to drop by James's office to ask for assistance. In May 2008, Stafford informed James that the dealership had gone out of business. James then helped Stafford in obtaining information about the current status of the dealership.

Stafford filed a bar complaint against James. While preparing his response, James found a verified complaint, signed by Stafford and notarized by James's paralegal on May 22, 2008. James was not aware that the paralegal had had Stafford sign the complaint, that it was notarized, or that it was in the file. Stafford had also paid an additional $809.28 in legal fees— after March 2007. James admits that based on his paralegal's actions, Stafford reasonably believed he was still represented and had paid for legal services he did not receive.

The Inquiry Commission issued a four-count charge alleging that James had violated SCR 3.130–1.3 by failing to diligently assess the client's case at the outset of the representation; SCR 3.130–1.5(a) by charging a fee that was unreasonable for the work performed; SCR 3.130–5.3(b) by failing to make reasonable efforts to ensure that his non-lawyer assistant's conduct was compatible with his professional obligations; and SCR 3.130–1.16(d) by failing to return the unearned portion of the advance fee payment, including any portion obtained by his staff without his knowledge.

### I. KBA File No. 19563

James also represented Marion Maggard in a social security disability case. He had filed a request for reconsideration in the matter. He closed his law office in Nicholasville and moved his practice to Georgetown without informing Maggard. After some time, Maggard obtained an address for James's new practice, and left multiple messages for him over the course of three weeks. James did not return those calls.

James was later contacted by another attorney who had begun representing Maggard in the matter. James sent the file to the new attorney in March 2011.

The Inquiry Commission issued a two-count charge alleging that James had violated SCR 3.130–1.4(a)(4) by failing to comply with reasonable requests for infor-

mation by the client; and SCR 3.130–1.16(d) by failing to give reasonable notice to the client of how to reach him upon termination of the representation.

## II. Discussion

■ James admits that his conduct violated these rules as described above, except as to the violation of Rule 1.16(d) in File No. 19171, in which James claims he did some work on the file and the client never paid the full fee, and the violation of Rule 8.4(c) in File No. 19334, in which James claims he was unaware of his actions but admits the client should have been advised properly, which was his responsibility. He also suggests that his behavior did not violate Rule 1.16(d) in File No 19463 with respect to the fee from the client (and admits the violation only as to the filing fee).

He also states in his motion that he has been diagnosed with bipolar disorder and has sought treatment through a psychiatrist. He began treatment in 2005, undergoing counseling and taking medication. This continued through 2007, when he failed to have the medication dosage properly monitored and adjusted. He also discontinued his regular therapy sessions.

He notes that the issues with his law practice began around this time and continued until he began to wind down his practice in 2011 and 2012. He has agreed to participate in KYLAP to address any relevant issues, including mental disorders and any addictions, during this period of suspension.

James reached a negotiated sanction to resolve the charges under SCR 3.480. Per the negotiations, James will be suspended from the practice of law for five years, will have to refund money to several clients within 180 days, and submit to an evaluation and ongoing monitoring by KYLAP over his continuing treatment.

The Movant now asks this Court to enter an order in conformity with his negotiations with the KBA's Office of Bar Counsel, which has no objection and asks that the motion be granted. According to the KBA, the Chair of the Inquiry Commission and a Past President of the KBA have reviewed and approved the sanction proposed by the Movant.

The negotiated sanction rule provides that "[t]he Court may consider negotiated sanctions of disciplinary investigations, complaints or charges if the parties agree." SCR 3.480(2). Specifically, "the member and Bar Counsel [must] agree upon the specifics of the facts, the rules violated, and the appropriate sanction." *Id.* Upon receiving a motion under this Rule, "[t]he Court may approve the sanction agreed to by the parties, or may remand the case for hearing or other proceedings specified in the order of remand." *Id.* Thus, acceptance of the proposed negotiated sanction still falls within the discretion of the Court.

In addition to the allegations detailed above, this Court considers a lawyer's prior disciplinary record. In addition to the current suspension for failure to pay bar dues and the automatic suspension for a felony conviction described above, James has two private admonitions from the Inquiry Commission, one in 2002 and one in 2007.

■ After reviewing the allegations and James's disciplinary record, this Court concludes that the discipline he proposes is adequate. His lengthy suspension reflects the seriousness and scope of his misconduct. Additionally, he will have to comply with his KYLAP agreement and face the rigors of the reinstatement process, SCR 3.510, before he can return to the practice of law in this Commonwealth.

## Order

ACCORDINGLY, IT IS ORDERED THAT:

1. Daniel Warren James is found guilty of the above-described and admitted violations of the Rules of Professional Conduct.

2. James is suspended from the practice of law in the Commonwealth of Kentucky for five years, beginning ten days after entry of this order.

3. James must make restitution to the following former clients and in following amounts within 180 days of entry of this order:
   a. $1,300 to Jackie Savage;
   b. $867.91 to Dena Greer Masters;
   c. $3,000 to Deborah Wilhoit;
   d. $151 to Sarah Campbell; and
   e. $809.28 to Hubert Stafford.

4. James will submit to an evaluation and ongoing monitoring by KYLAP during the period of suspension regarding his treatment, including medication and therapy.

5. In accordance with SCR 3.390, James shall notify, by letter duly placed with the United States Postal Service, all courts or other tribunals in which he has matters pending, and all clients of his inability to represent them and of the necessity and urgency of promptly retaining new counsel. He shall simultaneously provide a copy of all such letters of notification to the Office of Bar Counsel. He shall immediately cancel any pending advertisements, to the extent possible, and shall terminate any advertising activity for the duration of the term of suspension.

6. In accordance with SCR 3.450, James is directed to pay all costs associated with these disciplinary proceedings against him, said sum being $1,479.75, for which execution may issue from this Court upon finality of this Opinion and Order.

All sitting. All concur.

ENTERED: April 25, 2013.

/s/ John D. Minton, Jr.
    Chief Justice